**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 4963 |
| | ) | |
| SHELBOURNE DEVELOPMENT GROUP, INC. and GARRETT KELLEHER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Based on the Court's diversity jurisdiction, Plaintiff Bank of America, N.A. ("Bank of America") commenced this action on August 13, 2009 to collect on a Loan Agreement entered into by Bank of America and Defendant Shelbourne Development Group, Inc. ("Shelbourne") that was guaranteed by Defendant Garrett Kelleher ("Kelleher"). *See* 28 U.S.C. § 1332(a). On August 27, 2010, Bank of America filed a Second Amended Complaint after which Defendants filed an Answer, Affirmative Defenses, and Counterclaims. Before the Court is Bank of America's Motion to Dismiss Defendants' Fifth Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike Defendants' Third, Fourth, Fifth, Six, Seventh, and Eighth Affirmative Defenses under Rule 12(f). For the following reasons, the Court grants Bank of America's Motion to Dismiss Defendants' Fifth Counterclaim. Further, the Court, in its discretion, grants in part and denies in part Bank of America's Rule 12(f) Motion to Strike.

**BACKGROUND**

In their Counterclaim, Defendants allege that pursuant to the Loan Agreement entered into between Bank of America and Shelbourne on or about December 11, 2006, Bank of America agreed to make a $3 million revolving line of credit available to Shelbourne to assist Shelbourne in the development of the Chicago property commonly known as the "Spire Building." (R. 91, Defs.' Countercl. & Aff. Def. ¶¶ 1, 2.) In connection with the transaction, the parties signed a Loan Agreement and Note setting forth the terms of the loan. (*Id*. ¶¶ 1, 6.) Under the Loan Agreement, the $3 million line of credit was subject to a "conversion date" of July 1, 2007, at which time it would be converted into a Term Loan with monthly principal installment payments payable by "no later than December 1, 2011 or such earlier date as the availability may terminate as provided in this Agreement." (*Id*. ¶ 3.) Also on December 11, 2006, Kelleher executed a "Continuing and Unconditional Guaranty," under which Bank of America could seek to enforce remedies against Kelleher individually. (*Id*. ¶ 7.)

On or about June 7, 2007, Bank of America and Shelbourne executed an amendment to the Loan Agreement ("Amendment No. 1") in which Bank of America agreed to extend a term loan to Shelbourne. (*Id*. ¶ 9.) Defendants allege that the purpose of this new term loan was to "finance the build out of the sales center and offices located at NBC Tower, 455 North Cityfront Plaza, Chicago, Illinois 60611." (*Id*.) This new term loan was secured by (a) the pledge of a certificate of deposit maintained with Bank of America, (b) a grant of a security interest in certain leasehold improvements, and (c) Kelleher's personal guaranty. (*Id*.) Bank of America added a new financial covenant to Amendment No. 1:

> "8.2(C) To evidence the availability to Borrower of a facility for purposes of financing its development and construction of the Spire Building, Borrower shall

> obtain from a lender or syndicate of lenders, (i) on or prior to March 1, 2008 a letter of intent evidencing same, but, in any event, and (ii) no later than July 1, 2008, a binding irrevocable construction loan commitment, provided the Bank reserves the right to require that Borrower, after March 1, 2008, cash collateralize fully that portion of the Term Loan that is not at such time otherwise cash collateralized, and provided further, when delivered, such letter of intent and loan commitment shall be in form and substance acceptable to the bank."

(*Id*. ¶ 11.) This $7 million term loan was due and payable upon the earlier of December 1, 2011, or the Facility Expiration Date. (*Id*. ¶ 10.)

Also on June 7, 2007, Bank of America and Shelbourne executed a "Term Note" in a face amount of $7 million. (*Id*. ¶ 12.) The Term Note evidenced the indebtedness under the original Loan Agreement and stated that the "due date of this Term Note or any payment thereon may be accelerated or is automatically accelerated." (*Id*.)

On June 5, 2008, Bank of America and Shelbourne agreed to a second amendment to the Loan Agreement ("Amendment No. 2,"), the purpose of which was to accommodate Shelbourne's request for an extension of the time to obtain a binding irrevocable construction loan commitment until November 1, 2008. (*Id*. ¶ 13.) Section 8.2(c) was amended accordingly. (*Id*.) Defendants allege that thereafter, starting in September 2008, there was a significant disruption of interbank lending and credit liquidity resulting in an economic crisis. (*Id*. ¶¶ 14, 15.) As such, Defendants allege that as of November 1, 2008, it would have been commercially impracticable for any developer to obtain a binding construction loan commitment for a project of the size and scope of the Chicago Spire. (*Id*. ¶ 17.) In fact, Defendants admit that they were unable to obtain a binding irrevocable construction loan commitment by November 1, 2008. (*Id*. ¶ 19.)

3

Further, Defendants maintain that Bank of America publicly acknowledged that the 2008 financial crisis was unprecedented and not reasonably foreseeable.  (*Id*. ¶ 18.)  Defendants further allege that Bank of America's executives and officers repeatedly made public and private statements and other communications describing the crisis as "unprecedented," "unparalleled," and not reasonably foreseeable.  (*Id*.)

On November 3, 2008, Bank of America sent a letter to Defendants notifying them that it considered Defendants to be in default pursuant to the non-monetary financial covenant set forth in Section 8.2(c) of the Loan Agreement, as amended, that required Shelbourne to obtain a binding, irrevocable construction loan commitment by November 1, 2008.  (*Id.* ¶ 20.)  On November 18, 2008, Bank of America sent a follow-up letter to Shelbourne explaining that Shelbourne was required to provide additional collateral as a consequence of the non-monetary default identified in the November 3, 2008 default letter.  (*Id*. ¶ 21.)  Shelbourne did not meet this demand.  (*Id*.)  As such, Bank of America declared the loans to be in default "immediately accelerated and due and payable" and stated that, as of November 18, 2008, the "outstanding aggregate principal balance of the Loans evidenced by the Note, dated December 11, 2006, and the Term Note, dated June 7, 2007, is $8,499,996.64, plus accrued and unpaid interest on such principal balance is $50,135.51, plus any applicable late fees, legal fees, pre-payment penalties and expenses."  (*Id*.)

## LEGAL STANDARDS

### I. Rule 12(b)(6) Motions to Dismiss

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago*

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007); *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). Finally, "a Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing." *Miller v. Herman,* 600 F.3d 726, 733 (7th Cir. 2010) (citing Fed.R.Civ.P. 10(c)).

## II.     Rule 12(f) Motions to Strike

Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings.'" *Williams v. Jader*

5

*Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). "Motions to strike are 'not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Id.* Yet, "[i]t is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case." *Davis v. Elite Mortgage Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (citing *Heller*, 883 F.2d at 1295). "It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a 'short and plain statement' of all the material elements of the defense asserted; bare legal conclusions are not sufficient." *Id.* (citing *Heller*, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)). District courts have considerable discretion under Rule 12(f). *See Delta,* 554 F.3d at 1141-42.

## ANALYSIS

**I.       Breach of Implied Duty of Good Faith and Fair Dealing**

In Count V of the Counterclaim and in their Fourth Affirmative Defense,[1] Defendants contend that Bank of America breached the Loan Agreement and the implied duty of good faith and fair dealing by declaring a default based on Shelbourne's failure to satisfy the construction loan commitment by November 1, 2008. Specifically, Defendants contend that Bank of America breached the Loan Agreement by wrongfully declaring a non-monetary default and by

---

[1] Defendants label two of their affirmative defenses as their "Fourth Affirmative Defense," namely, their breach of implied duty of good faith and fair dealing defense and their mend the hold defense. The Court will refer to these affirmative defenses by name and not number.

demanding that Defendants provide additional collateral. Defendants, however, admit that they were unable to obtain a binding irrevocable construction loan commitment by November 1, 2008.

Under Illinois law, implicit in every contract is the duty of good faith and fair dealing. *See Horwitz v. Sonnenschein Nath & Rosenthal, LLP,* 399 Ill.App.3d 965, 978, 339 Ill.Dec. 459, 926 N.E.2d 934 (Ill. 2010); *see also Bank of America, N.A. v. Shelbourne Dev. Group, Inc.,* 732 F.Supp.2d 809 (N.D. Ill. 2010). "[T]his obligation requires a party vested with contractual discretion to exercise it reasonably, and further he may not do so arbitrarily, capriciously, or in a manner inconsistent with reasonable expectations of parties." *Kirkpatrick v. Strosberg,* 385 Ill.App.3d 119, 131, 323 Ill.Dec. 755, 894 N.E.2d 781 (Ill. 2008). The duty of good faith and fair dealing, however, is used only as a construction aid to determine the intent of the contracting parties. *See Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.,* 352 Ill.App.3d 160, 163, 287 Ill.Dec. 267, 815 N.E.2d 911 (Ill. 2004). In other words, "[t]his doctrine is a rule of construction, not a stand-alone obligation." *In re Kmart Corp.,* 434 F.3d 536, 542 (7th Cir. 2006); *see also Zeidler v. A & W Rests., Inc.,* 301 F.3d 572, 575 (7th Cir. 2002) ("The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law.").

Here, Defendants admit that they were unable to obtain the construction loan commitment by November 1, 2008. Furthermore, the failure to obtain a construction loan by November 1, 2008 was an event of default under the Loan Agreement. Because there is no contractual ambiguity regarding Bank of America's right to enforce the terms of the Loan Agreement, any analysis under the duty of good faith and fair dealing is not triggered. As the Seventh Circuit explains, "Illinois law holds that parties to a contract are entitled to enforce the

terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." *Cromeens, Holloman, Sibert, Inc v. AB Volvo,* 349 F.3d 376, 395 (7th Cir. 2003). Accordingly, the Court grants Bank of America's motion to dismiss Defendants' Fifth Counterclaim and affirmative defense based on the duty of good faith and fair dealing.

## II.     Commercial Impracticability

Next, Bank of America argues that the Court should strike Defendants' Third Affirmative Defense based on commercial impracticability concerning Defendants' monetary defaults as alleged in the Second Amended Complaint. As Bank of America recognizes, the Court already rejected its argument in the August 18, 2010 order granting in part and denying in part Bank of America's earlier motion to strike based on Defendants' inability to obtain a binding construction loan commitment. As the Court explained in its earlier order, the viability of this affirmative defense depends upon whether the economic downturn was foreseeable. *See Waldinger Corp. v. CRS Group Eng'rs, Inc.*, 775 F.2d 781, 786 (7th Cir. 1985). In the August 18, 2010 order, the Court concluded that based on the allegations in Defendants' commercial impracticability affirmative defense, whether the economic downturn was foreseeable cannot be resolved in a motion to strike.

Bank of America now maintains that based on a July 19, 2010 Illinois Appellate Court decision, the Court should strike Defendants' commercial impracticability defense as it pertains to Defendants' monetary defaults as alleged in the Second Amended Complaint. *See YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC,* 403 Ill.App.3d 1, 7, 342 Ill.Dec. 879, 933 N.E.2d 860 (Ill. 2010). First, the *YPI* decision does not change the Court's conclusion that whether the economic downturn was foreseeable cannot be determine in a motion to strike as it pertains to

Defendants' inability to obtain a binding construction loan commitment, especially because Defendants allege that Bank of America publically acknowledged that the 2008 financial crisis was unprecedented and not reasonably foreseeable.  *See Heller Financial,* 883 F.2d at 1294 (courts strike affirmative defenses "only when they are insufficient on the face of the pleadings.").

To clarify, in making its commercial impossibility determination, the Illinois Appellate Court in *YPI* relied solely upon Magistrate Judge Cole's opinion in *Ner Tamid Congregation of North Town v. Krivoruchko,* 638 F.Supp.2d 913, 928 (N.D. Ill. 2009).  In *Ner Tamid,* Judge Cole relied upon numerous newspaper articles and professional articles in the public domain warning of the impeding housing crisis that took place in the summer of 2007.  *See id.* at 926-27.  In doing so, Judge Cole concluded that the borrower failed to establish the affirmative defense of impracticability of performance based on the 2007 housing crisis in the context of a motion for summary judgment because the housing crisis was foreseeable.  *See id*. at 927-28.  Here, the Court must determine whether to strike the commercial impossibility defense viewing the pleadings in Defendants' favor – not at summary judgment after the parties have presented evidence.  Thus, the Court's earlier ruling was not in error.

Bank of America now argues that the commercial impossibility or impracticability defense is inapplicable to Defendants' monetary defaults.  To clarify, the "'impossibility' doctrine never justifies failure to make a payment, because financial distress differs from impossibility."  *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.,* 582 F.3d

721, 728 (7th Cir. 2009) (citing Restatement (Second) of Contracts § 261 & cmt. d).[2]  Indeed,
Defendants' financial inability does not discharge their duties under the Loan Agreement based
on their commercial impracticability defense.  *See Days Inn of Am., Inc. v. Patel,* 88 F.Supp.2d
928, 933 (C.D. Ill. 2000) ("simple inability to pay does not create an impossibility or
impracticality which excuses a party's performance of his contractual obligations").  Therefore,
the Court grants Bank of America's motion to strike Defendants' commercial impracticability
affirmative defense as to Defendants' monetary defaults.

**III.    Mend the Hold Doctrine**

Next, Defendants argue that the "mend the hold doctrine" under Illinois law bars Bank of
America from asserting the November 1, 2008 monetary defaults because Bank of America's
original complaint alleged a non-monetary default.  In other words, Defendants maintain that
Bank of America cannot sue Defendants for the alleged monetary defaults because in its original
complaint Bank of America based this lawsuit on the non-monetary default involving the
construction loan commitment.

"[T]he contract doctrine of 'mend the hold,' [] limits the right of the defendant in a
breach of contract suit to change his defense in the course of litigation and is thus a facet of the
doctrine of good-faith performance of contracts." *Thorogood v. Sears, Roebuck & Co.,* 547 F.3d
742, 746 (7th Cir. 2008) (citing *Harbor Ins. Co. v. Continental Bank Corp.,* 922 F.2d 357, 364-
65 (7th Cir. 1990)); *see also William J. Templeman Co. v. U.S. Fidelity & Guar. Co.,* 317
Ill.App.3d 764, 771, 250 Ill.Dec. 886, 739 N.E.2d 883 (Ill. 2000) (mend the hold doctrine is

---

[2] Illinois courts follow the Restatement (Second) of Contracts § 261.  *See, e.g., Northern Ill. Gas Co. v. Energy Co-op., Inc.,* 122 Ill.App.3d 940, 956, 78 Ill.Dec. 215, 461 N.E.2d 1049 (Ill. 1984).

based on considerations of good faith and fair dealing). "Under the doctrine of 'mend the hold,' in force in Illinois, a party to a contract cannot, at least after the pleadings are complete, repudiate a position taken in the course of litigation over the contract." *Horwitz-Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1251 (7th Cir. 1996). The mend the hold doctrine, however, does not apply at the pleading stages of a lawsuit. *See Delaney v. Marchon, Inc.,* 254 Ill.App.3d 933, 941, 194 Ill.Dec. 128, 627 N.E.2d 244 (Ill. 1993).

Because this lawsuit is still in the pleading stages, Bank of America has not changed its position as prohibited by the mend the hold doctrine. *See id.*; *see also Montgomery Ward & Co., Inc. v. Home Ins. Co.,* 324 Ill.App.3d 441, 451, 257 Ill.Dec. 373, 753 N.E.2d 999 (Ill. 2001) ("'mend the hold' doctrine is a common law doctrine that limits the right of a party in a contract suit to change its position mid-litigation"). Put differently, the mend the hold doctrine does not prohibit Bank of America from amending its allegations to include both the alleged non-monetary default and monetary defaults. Therefore, the Court grants Bank of America's motion to strike Defendants' affirmative defense based on the common law mend the hold doctrine as it pertains at this stage of the proceedings. The Court, however, denies Bank of America's motion to strike as it pertains to any attempt by Bank of America to change its theories of liability later in these proceedings.

On a final note, the Seventh Circuit teaches that the reach of the mend the hold doctrine beyond the pleading stages of a lawsuit is uncertain because if the doctrine is "viewed procedurally, as a rule somehow limited to litigation, it may cross the line that separates 'substance' from 'procedure'" evoking *Erie* doctrine concerns. *Harbor Ins.,* 922 F.2d at 364; *see also Houben v. Telular Corp.*, 309 F.3d 1028, 1032, 1036 (7th Cir. 2002). As the *Houben*

decision explains, the mend the hold "doctrine is in at least potential tension with the philosophy of the Federal Rules of Civil Procedure, which permit pleadings to be amended well into the litigation, if the district court thinks that amendment would be in the interest of justice." *Id.* at 1036. Because neither side discussed whether the common law mend the hold doctrine applies in federal courts under *Erie*, the Court leaves this discussion for another day.

## IV. Waiver, Laches, Equitable Estoppel, and Election of Remedies

In addition, Bank of America argues that Defendants' affirmative defenses based upon waiver (Fifth Affirmative Defense) and laches (Eighth Affirmative Defense) are barred by the terms of the parties' agreement. More specifically, the Note states that "no delay on the part of the bank in exercising any right under this Note . . . shall operate as a waiver of such right or any other right under this note, nor shall omission in exercising any right on the part of the Bank under this Note operate as a waiver of any other rights." (R. 84, Second Am. Compl., Ex. B, Note, at 2.) Moreover, the Loan Agreement states "[i]f the Bank waives a default, it may enforce a later default. Any consent or waiver under this Agreement must be in writing." (*Id*., Ex. A, Loan Agmt. ¶ 10.5.) Thus, under the unambiguous terms of the parties' agreement, waiver and laches are barred as affirmative defenses.

Next, Bank of America argues that Defendants' Seventh Affirmative Defense of equitable estoppel is equally unavailing. To clarify, Defendants allege in their affirmative defense that "[b]y declaring a default, terminating the credit facilities, accelerating all amounts of principal and interest outstanding pursuant to the Loan Agreements, and demanding immediate payment thereof, the Bank represented to Defendants that it would only accept performance from Defendants according to the terms it declared." (R. 91, Seventh Aff. Def. ¶

12

2.) Defendants' alleged reliance on the fact that Bank of America would not accept further payments, however, is contradicted by the fact that Shelbourne continued to make payments after Bank of America declared default in November 2008. (*Id.*, Answer ¶¶ 6, 7; Countercl. ¶¶ 25, 27.) Essentially, Defendants have pleaded themselves out of court by admitting facts that vitiate their affirmative defense. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers,* 562 F.3d 798, 810 (7th Cir. 2009). Therefore, the Court grants Bank of America's motion to strike Defendants' Seventh Affirmative Defense.

In their Sixth Affirmative Defense, election of remedies, Defendants allege that "[b]y declaring a default, terminating the credit facilities, accelerating all amounts of principal and interest outstanding pursuant to the Loan Agreements, and demanding immediate payment thereof, the Bank made an election of remedies pursuant to a contract." (*Id.*, Sixth Aff. Def. ¶ 2.) Under Illinois common law, the "doctrine of election of remedies is applicable only where a party has elected inconsistent remedies for the same injury or cause of action." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.,* 386 Ill.App.3d 585, 596-97, 325 Ill.Dec. 461, 898 N.E.2d 194 (Ill. 2008) (citation omitted). As the Illinois Appellate Court explains:

> The prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights. For instance, a remedy based on the affirmance of a contract (*e.g.*, damages) is generally inconsistent with one based on the disaffirmance of the contract (*e.g.*, rescission). Thus, the election of either remedy is an abandonment of the other.

*Id.* at 597 (citation and internal citations omitted).

Here, Bank of America argues that the election of remedies doctrine is inappropriate under the circumstances because it did not receive any benefit from declaring a default of Section 8.2(c) of the Loan Agreement, as amended, namely, the construction loan commitment.

13

*See Crown Life Ins. Co. v. American Nat'l Bank &Trust Co. of Chicago,* 35 F.3d 296, 299 (7th Cir. 1994) ("An election of remedy occurs only when a party accepts the benefit of pursuing the initial remedy"). Nonetheless, the doctrine of election of remedies under Illinois common law is in flux, *see Kel-Keef Enter., Inc. v. Quality Components Corp.,* 316 Ill.App.3d 998, 1009, 738 N.E.2d 524, 532, 250 Ill.Dec. 308, 316 (Ill. 2000), and neither party has fully explained how the doctrine applies or does not apply to the allegations in this case. Moreover, Illinois courts have concluded that a determination of the election of remedies doctrine is not appropriate at the pleading stage of a lawsuit. *See Ransburg v. Haase,* 224 Ill.App.3d 681, 690, 167 Ill.Dec. 23, 586 N.E.2d 1295 (Ill. 1992) (citing *Walsh v. Oberlin,* 2 Ill.App.3d 987, 276 N.E.2d 728 (Ill. 1971). Accordingly, the Court, in its discretion, denies Bank of America's motion to strike Defendants' Sixth Affirmative Defense.

## CONCLUSION

For these reasons, the Court grants Plaintiff's Motion to Dismiss Defendants' Fifth Counterclaim. Furthermore, the Court, in its discretion, grants in part and denies in part Plaintiff's Rule 12(f) Motion to Strike.

**Dated:** March 3, 2011

                                        **ENTERED**

                                        *[signature]*

                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**