IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09 C 4963 |
| SHELBOURNE DEVELOPMENT GROUP, INC. and GARRETT KELLEHER, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Based on the Court's diversity jurisdiction, Plaintiff Bank of America, N.A. ("Bank of America") filed the present Second Amended Complaint on August 27, 2010 to collect on a Loan Agreement and Credit Card Agreement entered into by Bank of America and Defendant Shelbourne Development Group, Inc. ("Shelbourne") that was guaranteed by Defendant Garrett Kelleher ("Kelleher"). *See* 28 U.S.C. § 1332(a). Before the Court is Bank of America's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). For the following reasons, the Court grants Bank of America's summary judgment motion and enters judgment in favor of Bank of America, as discussed in detail below. The Court directs Bank of America to file a separate petition for attorney's fees and costs on or before August 22, 2011.

**BACKGROUND**

**I.** **Northern District of Illinois Local Rule 56.1**

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to

prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). The Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d

at 528. It is well-established that "district courts are entitled to expect strict compliance with Local Rule 56.1." *Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006)

The vast majority of Defendants' denials to Bank of America's Rule 56.1(a)(3) Statement of Facts do not reference any affidavits, parts of the record, and other supporting materials as required by Local Rule 56.1(b)(3)(B), and thus Bank of America's Statements ¶¶ 1, 2, 7, 9-11, 15, 16, 19-21, 23, 25-29, 31-36, 37-41 are deemed admitted. *See Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 393 (7th Cir. 2009); *Cracco,* 559 F.3d at 632; *Cichon,* 401 F.3d at 809-10.

Also, all of Defendants' statements in their Local Rule 56.1(b)(3)(C) Statement of Additional Facts are supported by their answers and affirmative defenses to Bank of America's Second Amended Complaint. Mere allegations in a parties' pleadings do not constitute evidence and courts may only consider admissible evidence when determining summary judgment motions. *See Gunville v.* Walker, 583 F.3d 979, 985 (7th Cir. 2009); *Tibbs v. City of Chicago,* 469 F.3d 661, 663 n.2 (7th Cir. 2006); *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003). As the Seventh Circuit instructs, "mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment." *Burrell v. City of Mattoon,* 378 F.3d 642, 648 (7th Cir. 2004). Accordingly, the Court strikes Defendants' Rule 56.1(b)(3)(C) Statement of Additional Facts.

## II. Relevant Facts

### A. Parties

Bank of America is a national banking association with its principal place of business in Charlotte, North Carolina. (R. 123, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) Shelbourne is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago,

Illinois. (*Id*. ¶ 3.) Kelleher, the President of Shelbourne, is a citizen of the Republic of Ireland, who maintains a home in the State of Illinois. (*Id*. ¶ 4.)

### B. The Loan Agreement

On December 11, 2006, Bank of America and Shelbourne, by its president, Kelleher, entered into a Loan Agreement ("Loan Agreement"). (*Id*. ¶ 7.) Under the Loan Agreement, Bank of America made a $3 million revolving line of credit available to Shelbourne to assist Shelbourne in its development of the Chicago property commonly known as the "Spire Building." (*Id*.) The Loan Agreement's revolving line of credit was available to Shelbourne only between December 11, 2006 and June 30, 2007, at which point the loan converted into a term loan payable by "no later than December 1, 2011 or such earlier date as the availability may terminate as provided" in the Loan Agreement. (*Id*. ¶ 8.) Pursuant to the Loan Agreement, on December 11, 2006, Shelbourne executed a promissory note ("Note") in the amount of $3 million in favor of Bank of America. (*Id*. ¶ 9.) The Note states that "[n]o delay on the part of the Bank in exercising any right under this Note ... shall operate as a waiver of such right or any other right under this Note, nor shall omission in exercising any right on the part of the Bank under this Note operate as a waiver of any other rights." (*Id*.)

Pursuant to the Loan Agreement and the Note, Shelbourne was required to make monthly principal payments in the amount of $27,777.78, commencing on July 1, 2007. (*Id*. ¶ 10.) The Loan Agreement provides that upon a failure to make these required payments, Bank of America may "declare the Borrower in default, stop making any additional credit available to the Borrower, and require the Borrower to repay its entire debt immediately and without prior notice." (*Id*. ¶ 11.) The Loan Agreement also states that "[i]f the Bank waives a default, it may

enforce a later default [and] [a]ny consent or waiver under this Agreement must be in writing." (*Id*.) In addition, the Loan Agreement provides that an event of default occurs when "[a]ny default occurs under any other agreement any Borrower (or any Obligor) or any of the Borrower's related entities or affiliates has with the Bank or any affiliate of the Bank." (*Id*.)

On June 7, 2007, Bank of America and Shelbourne executed Amendment No. 1 to the Loan Agreement ("Amendment No. 1") under which Bank of America extended a $7 million term loan to Shelbourne. (*Id*. ¶ 12.) On June 7, 2007, Bank of America and Shelbourne executed a promissory note ("Term Note") in the amount of $7 million in favor of Bank of America. (*Id.* ¶ 13.) Amendment No. 1 states: "To evidence the availability to [Shelbourne] of a facility for purposes of financing its development and construction of the Spire Building, [Shelbourne] shall obtain from a lender or syndicate of lenders, (i) on or prior to March 1, 2008 a letter of intent evidencing same, but, in any event, and (ii) no later than July 1, 2008, a binding irrevocable construction loan commitment ...." (*Id.* ¶ 14.) Amendment No. 1 provides that the term loan would be available to Shelbourne, in multiple principal advances, only prior to December 1, 2007. (*Id*. ¶ 15.) Pursuant to Amendment No. 1 and the Term Note, Shelbourne was required to make monthly payments in the amount of $116,667.00 commencing on January 1, 2008. (*Id*. ¶ 16.) Amendment No. 1 also states that the Term Note was due and payable on June 1, 2010. (*Id*. ¶ 17.)

On June 5, 2008, Bank of America and Shelbourne, by its president, Kelleher, executed Amendment No. 2 to Loan Agreement ("Amendment No. 2"). (*Id*. ¶ 18.) The purpose of Amendment No. 2 was to accommodate Shelbourne's request for an extension of time to obtain a construction loan commitment until November 1, 2008. (*Id*.) Amendment No. 2 amended

Section 8.2(c) of the Loan Agreement requiring Shelbourne to comply with the following term:

> To evidence the availability to [Shelbourne] of a facility for purposes of financing its development and construction of the Spire Building, [Shelbourne] shall obtain from a lender or syndicate of lenders, no later than November 1, 2008, a binding irrevocable construction loan commitment, and provided further, when delivered, such loan commitment shall be in form and substance acceptable to [Bank of America].

(*Id*. ¶ 19.)

Shelbourne admits that as of November 1, 2008, it failed to deliver a construction loan commitment in compliance with Amendment No. 2. (*Id*. ¶ 20.) Thereafter, in a November 3, 2008 letter, Bank of America notified Shelbourne of its default. (*Id*. ¶ 21.) In this letter, Bank of America explained that Shelbourne's failure to provide a construction loan commitment as required by Section 8.2(c) of the Loan Agreement constituted an Event of Default under the Loan Agreement. (*Id*.) On November 18, 2008, Bank of America sent Shelbourne a second default letter. (*Id*. ¶ 22.) In this second letter, Bank of America explained that it had demanded additional collateral from Shelbourne as a consequence of the default identified in the November 3, 2008 letter. (*Id*.) Because Shelbourne was unable to comply with this demand, Bank of America accelerated all amounts due under the Loan Agreement. (*Id*.) Shelbourne never cured its default on the Loan Agreement by providing a construction loan commitment and never complied with Bank of America's demand for an accelerated payment of all amounts owed under the Loan Agreement. (*Id*. ¶ 23.) Also, Shelbourne has not made any regular monthly payments on either the Note or the Term Note since November 18, 2008. (*Id*.) The Term Note remains unpaid. (*Id.* ¶ 24.)

As of April 18, 2011, the balance due on the Note was $2,799,397.00, consisting of of $2,656,543.16 in principal, $106,547.57 in interest, and late fees of $36,306.27. (*Id*. ¶ 25.)

Per diem interest on the Note is $90.87. (*Id.*) As of April 18, 2011, the balance due on the Term Note was $2,321,614.17, which is comprised of $2,085,638.06 in principal, $119,755.68 in interest, and late fees of $116,220.43. (*Id.* ¶ 26.) Per diem interest on the Term Note is $61.92. (*Id.*) As such, as of April 18, 2011, the total amount due pursuant to the Loan Agreement was $5,121,011.17 and per diem interest on the amounts owed pursuant to the Loan Agreement is $152.79. (*Id.* ¶ 27.) The Loan Agreement further provides that Bank of America is entitled to recover attorney's fees, other costs, and expenses incurred in enforcing its rights under the Loan Agreement and the promissory notes entered into pursuant to the Loan Agreement. (*Id.* ¶ 28.)

### C. Credit Card Agreement

On October 9, 2007, Bank of America and Shelbourne entered into a Credit Card Agreement ("Credit Card Agreement"), after which Bank of America issued Shelbourne a commercial credit card ("Commercial Card"). (*Id.* ¶ 31.) On August 4, 2009, Bank of America sent Shelbourne a letter terminating Shelbourne's Commercial Card effective August 31, 2009 and demanding payment in full of all amounts owed in connection with the Commercial Card by September 30, 2009. (*Id.* ¶ 32.) Shelbourne defaulted on the Credit Card Agreement by failing to make payment in full by September 30, 2009 or at any time thereafter. (*Id.* ¶ 33.) As of April 15, 2011, Shelbourne owes Bank of America a total of $117,342.64 in connection with the Commercial Card. (*Id.* ¶ 34.) Per diem interest on the Commercial Card is $26.23. (*Id.* ¶ 35.)

### D. The Guaranty

On December 11, 2006, Kelleher signed a Continuing and Unconditional Guaranty ("Guaranty"). (*Id.* ¶ 37.) Pursuant to the Guaranty, Kelleher personally guaranteed Shelbourne's payment of "any and all debts, liabilities, and obligations of [Shelbourne] to [Bank

of America], now or hereafter existing...." (*Id*. ¶ 38.) Paragraph 8 of the Guaranty, entitled "Waiver of Notices" states:

> Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of intent to accelerate, notices of acceleration, notices of any suit or any other action against Borrower or any other person, any other notices to any party liable on any Loan Document (including Guarantor), notices of acceptance of this Guaranty, notices of the existence, creation, or incurring of new or additional Indebtedness to which this Guaranty applies or any other Indebtedness of Borrower to Bank, and notices of any fact that might increase Guarantor's risk.

(*Id*. ¶ 39.) Kelleher has not paid the amounts that Shelbourne owes Bank of America pursuant to the Loan Agreement, the Note, the Term Note, or the Credit Card Agreement. (*Id*. ¶ 40.) The Guaranty provides that Bank of America is entitled to recover its attorney's fees, other costs, and expenses incurred by enforcing its rights under the Guaranty. (*Id*. ¶ 41.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

8

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

**I.     Breach of Contract Claims**

In its Second Amended Complaint, Bank of America alleges breach of contract claims in regard to the Loan Agreement, the Credit Card Agreement, and the Guaranty.  The parties agree that Illinois law governs these claims.  To established a breach of contract claim under Illinois law, a plaintiff must establish:  (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) damages.  *See Reger Dev., LLC v. National City Bank,* 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber,* 401 Ill.App.3d 528, 531, 340 Ill.Dec. 669, 928 N.E.2d 1266 (Ill. 2010).

In their response brief, Defendants do not argue that Bank of America has failed to fulfill these four elements or that Defendants did not breach the contracts at issue.  *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion amounts to abandonment of claims); *Wojtas v. Capital Guardian Trust Co.,* 477 F.3d 924, 926 (7th Cir. 2007) (failure to offer any opposition to argument constitutes waiver).  Instead, Defendants argue that their elections of remedies affirmative defense bars summary judgment.  Nevertheless, for the sake of completeness, the Court reviews the evidence supporting Bank of America's breach of contract claims.

First, the undisputed facts establish that Bank of America has satisfied all four elements of a breach of contract claim concerning the Loan Agreement.  Specifically, Bank of America and Defendants executed the Loan Agreement, Amendment No. 1, Amendment No. 2, and the Term Note.  Also, Bank of America has complied with all duties imposed upon it pursuant to

9

these agreements.  Moreover, Shelbourne admitted that it defaulted on the Loan Agreement by failing to deliver a construction loan commitment by November 1, 2008.  And, as a result of Shelbourne's default, Bank of America demanded immediate repayment of all amounts owed under the Loan Agreement on November 18, 2008.

In addition, evidence in the record reveals that Bank of America has satisfied the breach of contract elements in regard to the Credit Card Agreement.  In particular, the parties entered into the Credit Card Agreement on October 9, 2007, and Bank of America has complied with the duties imposed upon it under the Credit Card Agreement.  Further, on August 4, 2009, Bank of America sent Shelbourne a letter terminating Shelbourne's Commercial Card effective August 31, 2009 and demanding payment in full in connection with the Commercial Card by September 30, 2009.  Shelbourne, however, failed to make payment in full by September 30, 2009 or at any time thereafter.

Finally, Defendants have not presented evidence disputing the material facts regarding Kelleher's liability pursuant to his Guaranty of Shelbourne's indebtedness.  To clarify, to "establish a prima facie case for enforcement of a guaranty under Illinois law, the plaintiff must 'enter[ ] proof of the original indebtedness, the debtor's default, and the guarantee." *General Elec. Bus. Fin. Servs., Inc. v. Silverman,* 693 F.Supp.2d 796, 799 (N.D. Ill. 2010) (quoting *Mid-City Indus. Supply Co. v. Horwitz,* 132 Ill.App.3d 476, 87 Ill.Dec. 279, 476 N.E.2d 1271, 1277 (1985)).  Here, there is no genuine dispute as to the material facts that Shelbourne defaulted on its obligations under the Loan Agreement and Credit Card Agreement and that Kelleher personally guaranteed payment of any and all debts, liabilities, and obligations of Shelbourne to Bank of America.

## II.     Election of Remedies Defense[1]

Defendants maintain that their affirmative defense of election of remedies arises out of Bank of America's acceleration of the entire indebtedness on November 18, 2008. Defendants explain that by doing this, Bank of America relinquished its right to demand Defendants to perform by paying on the installment schedule. As such, Defendants argue that Bank of America elected the remedy of acceleration, and thus Bank of America cannot seek the money due based on the monthly installment payments.

Under Illinois common law, the "doctrine of election of remedies is applicable only where a party has elected inconsistent remedies for the same injury or cause of action." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.,* 386 Ill.App.3d 585, 596-97, 325 Ill.Dec. 461, 898 N.E.2d 194 (Ill. 2008) (citation omitted). "The doctrine of election of remedies 'should be confined to cases where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied.'" *Kel-Keef Enter., Inc. v. Quality Components Corp.,* 316 Ill.App.3d 998, 1008, 250 Ill.Dec. 308, 738 N.E.2d 524 (Ill. 2000) (citation omitted).

Throughout this lawsuit, Bank of America has sought only one remedy, namely, the full repayment of its loans. Simply put, when Bank of America declared default and accelerated the repayment amounts under the Loan Agreement, Bank of America elected the remedy of full repayment. Moreover, the undisputed facts unequivocally show that Shelbourne never cured its default on the Loan Agreement by providing a construction loan commitment and never

---

[1] After granting in part and denying in part Bank of America's motions to strike Defendants' various affirmative defenses, the only remaining affirmative defense at issue in this lawsuit is Defendants' elections of remedies defense. (R. 81, 118.)

11

complied with Bank of America's demand for an accelerated payment of all amounts owed under the Loan Agreement. Therefore, Bank of America has never received a benefit from declaring default and accelerating the repayment amounts and it is well-established that an "election of remedy occurs only when a party accepts the benefit of pursuing the initial remedy." *Crown Life Ins. Co. v. American Nat'l Bank and Trust Co. of Chicago*, 35 F.3d 296, 299 (7th Cir. 1994) (applying Illinois law). In other words, there is no threat of double recovery under the circumstances. *See Hanson-Suminski* 386 Ill.App.3d at 596 (election of remedies defense inapplicable where there is no threat of double recovery); *Independent Trust Corp. v. Hurwick,* 351 Ill.App.3d 941, 954, 286 Ill.Dec. 669, 814 N.E.2d 895 (Ill. 2004) (same). Because Bank of America did not receive any benefits from declaring default and accelerating the repayment amounts, Defendants' election of remedies defense fails. The Court therefore grants Bank of America's summary judgment motion.

### III.     Amount of Judgment

The Court enters judgment against Defendants as follows: (1) Defendant Shelbourne on Count I of the Second Amended Complaint, which alleges a breach of contract claim as to the Loan Agreement, in the amount of $5,121,011.17, plus per diem interest of $152.79 through the date of judgment; (2) Defendant Kelleher on Count II of the Second Amended Complaint, which alleges a breach of contract claim regarding his Guaranty of the Loan Agreement, in the amount of $5,121,011.17, plus per diem interest of $152.79 through the date of judgment; (3) Defendant Shelbourne on Count III of the Second Amended Complaint, which alleges a breach a contract claim as to the Credit Card Agreement, in the amount of $117,342.64, plus per diem interest of $26.23 through the date of judgment; and (4) Defendant Kelleher on Count V of the Second

Amended Complaint, which alleges a breach of the Guaranty for the Credit Card Agreement, in the amount of $117,342.64, plus per diem interest of $26.23 through the date of judgment. The Court directs Bank of America to file a separate petition for attorney's fees and costs by no later than August 22, 2011.

## CONCLUSION

For the these reasons, the Court grants Plaintiff's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(b) and enters judgment in Plaintiff's favor. The Court also grants Plaintiff's motion to strike.

**Date:** August 5, 2011

**ENTERED**

*/s/ Amy J. St. Eve*
**AMY J. ST. EVE**
**United States District Court Judge**